UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TERRY L REPP,

      Plaintiff,

v.                                    Case No: 2:15-cv-220-FtM-38CM

LAURA BEDARD, E-JZ KANKAM
and SANDRA DEE DUNIVENT,

      Defendants.
_____/

## OPINION AND ORDER[1]

Before the Court is Defendant Warden Laura Bedard's Motion for Summary Judgment, and Incorporated Memorandum of Law (Doc. 79) filed on August 2, 2018. Plaintiff Terry Repp did not file a response to the Motion, and the time to do so has expired. For the following reasons, the Court grants the Motion for Summary Judgment.

## BACKGROUND

Repp brings this civil rights action under 42 U.S.C. § 1983. Repp claims that Warden Bedard showed deliberate indifference to a serious medical need caused by a detached retina in his right eye while he was incarcerated in the Moore Haven Correctional Institution in 2013. (Doc. 1). Warden Bedard was the warden while Repp

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

was incarcerated at Moore Haven. (Doc. 1 at 13). Repp is no longer housed at Moore Haven, but has been transferred to the Sumter Work Camp. (Doc. 66-1).

Repp alleges that on the morning of April 7, 2013,[2] he submitted a sick call request to address a vision problem with his right eye. (Doc. 1 at 3). Repp was examined by Nurse Dunivent that afternoon. (Doc. 1 at 3). Nurse Dunivent examined Repp's eye using two eye charts and an ophthalmoscope. (Doc. 1 at 4). After the examination, Nurse Dunivent referred Repp to a doctor.

Repp was examined by Dr. Kankam two days later. By that time, Repp reported a total loss of vision in his right eye. (Doc. 1 at 4). Following his examination, Dr. Kankam referred Repp to an eye specialist. (Doc. 1 at 4). Repp was taken to medical to see the eye specialist on April 24. However, once he arrived at medical he was informed that his appointment with the eye specialist would have to be rescheduled. (Doc. 1 at 4). Repp says that he does not know why his appointment with the eye specialist was cancelled. (Doc. 1 at 4). The eye doctor only visited Moore Haven once a month.

On May 2, Repp submitted an informal grievance/inmate request form for medical attention to Nurse Supervisor McGrory. (Doc. 1 at 4). McGrory responded that Repp had already seen medical staff and had been referred to the doctor but had not returned to medical to have his vision rechecked. (Doc. 1 at 5); (Doc. 66-3). McGrory noted in her response that Repp's vision on April 7, was the same as it was on October 26, 2010. (Doc. 66-3). McGrory told Repp to follow up with a sick call request if he required further attention. (Doc. 1 at 5); (Doc. 66-3).

---

[2] Unless further specified, all dates noted occurred in 2013.

On May 22, Repp happened to see Warden Bedard in the step-down dormitory. (Doc. 1 at ¶15). Repp inquired about his medical appointment with Dr. Brennen (the eye doctor) and explained the situation with his right eye. (Doc. 1 at ¶15). Warden Bedard told Repp "oh don't worry we aren't going to let you go blind." (Doc. 15 at ¶15).

On May 28, Repp was seen by the eye doctor who diagnosed him with a detached retina in his right eye. (Doc. 1 at 5). Two days later, Repp was taken to the Visual Health and Surgery Center where he was examined by Dr. Baalhaness. (Doc. 1 at 5). Due to the severity and complexity of the case, Dr. Baalhaness referred Repp to Dr. Fortun at the Bascom Palmer Eye Institute. (Doc. 1 at 5). On June 4, Repp was examined at the Institute where it was determined that he would need eye surgery to reattach his retina. (Doc. 66-5). Repp's Surgery was scheduled for June 24. Nothing in the record shows that Warden Bedard had anything to do with Repp's surgery schedule. The surgery was completed and Repp was taken for several follow up visits thereafter. (Doc. 66-2).

On July 28, Repp submitted a sick call request concerning his left eye. Repp was seen by the Moore Haven medical department on July 29. Repp was taken to the Bascom Palmer Eye Institute and one day later underwent surgery for his left eye to repair a detached retina. Repp went to several follow up examinations for both eye procedures.

## **STANDARD OF REVIEW**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 U.S. 2505, 91 L. Ed. 2d 202 (1986). Similarly, an

issue is material if it may affect the outcome of the suit under governing law. Id. The moving party bears the burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In deciding whether the moving party has met this initial burden, the Court must review the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party. Whatley v. CNA Ins. Co., 189 F.3d 1310, 1313 (11th Cir. 1999).

## DISCUSSION

Repp claims that Warden Bedard showed deliberate indifference to a serious medical need caused by a detached retina in his right eye while he was incarcerated at Moore Haven. Warden Bedard moves for summary judgment arguing Plaintiff has not shown a custom, or policy, of deliberate indifference and that there is no respondeat superior or vicarious liability under § 1983 unless Repp can show a causal connection between the actions of Warden Bedard and the alleged constitutional deprivation.

### *Deliberate Indifference*

It is well established that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' ... proscribed by the Eighth Amendment." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (*quoting Estelle v. Gamble,* 429 U.S. 97, 104 (1976)). A prisoner states a valid claim, under 42 U.S.C. § 1983, "whether the indifference is manifested by prison doctors in their response to the prisoner's needs ... or by prison guards in intentionally denying or delaying access to medical care ... or intentionally interfering with treatment once proscribed." *Id.* at 104–05.

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." *Brown,* 387 F.3d at 1351 (*quoting Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir.2003)). First, the plaintiff must prove an objectively serious medical need. *Brown,* 387 F.3d at 1351. Second, the plaintiff must prove that the prison official acted with deliberate indifference to that need. *Id.* "A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (citing *Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1187 (11th Cir.1994)). In either case, "the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id.*

Here, no one denies that Repp was diagnosed with a serious medical need. So the next step is to determine if Warden Bedard acted with deliberate indifference to that need. To establish the second element, deliberate indifference to the serious medical need, the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence. *Id.* (*citing McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir.1999)); *See Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007) (holding that the conduct must be more than gross negligence).

Supervisory officials are not liable under § 1983 on the basis of respondeat superior or vicarious liability. *Belcher v. City of Foley,* 30 F.3d 1390, 1396 (11th Cir.1994). Supervisory liability occurs only when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervisory official and the alleged constitutional violation. *Brown v. Ridgway*, 845 F.

5

Supp. 2d 1273, 1279 (M.D. Fla. 2012). Thus, for Warden Bedard to be deliberately indifferent to Repp's condition she would had to have known of his detached retina and then deliberately disregarded the risk to Repp's eye. *See Farrow v. West*, 320 F. 3d 1235, 1245 (11th Cir. 2003) (stating that "a prison official cannot be found deliberately indifferent under the Eighth Amendment unless the official *knows of* and *disregards an excessive risk to inmate health or safety;* the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference.").

Repp alleges that if Warden Bedard had responded in an appropriate manner when he spoke with her he would not have had the problems that arose with his eye. However, Repp presents no facts to support a claim that Warden Bedard had subjective knowledge of a risk of serious harm to his eye. Warden Bedard did not have any hands-on medical experience with Repp's eye treatment. Warden Bedard could not have been aware that Repp's retina was detached in his right eye because their conversation occurred on May 22, prior to Repp being diagnosed with a detached retina on May 28. (Doc. 1 at ¶15, 16). Further Repp does not claim Warden Bedard refused him treatment nor are there any facts in the Complaint that suggest that Warden Bedard personally intervened to delay or prevent Repp from receiving treatment. The only contact Warden Bedard had with Repp was a conversation where she told him not to worry because the prison would not let him go blind. (Doc. #1 at ¶15).

Based upon the record, Warden Bedard did not have the subjective knowledge of the risk of serious harm faced by Repp. Accordingly, there was no deliberate indifference to Repp's medical needs by Warden Bedard. *See Campbell v. Sikes,* 169 F.3d 1353,

1364 (11th Cir.1999) (quoting *Steele v. Shah,* 87 F.3d 1266, 1269 (11th Cir.1996) (*holding* "summary judgment must be granted for the defendant official unless the plaintiff presents evidence of the official's subjective knowledge, 'since a finding of deliberate indifference requires a finding of the defendant's subjective awareness of the relevant risk, a genuine issue of material fact exists only if the record contains evidence, albeit circumstantial, of such subjective awareness.'")). Since Repp has failed to present a genuine issue of material fact suggesting that Warden Bedard understood the risk of harm he was facing, summary judgment is due to be issued in favor of Warden Bedard.

Further, there is no evidence that suggests that Warden Bedard had a custom, policy, or practice of denying or delaying treatment to Repp or others. In fact, Plaintiff's Complaint supports just the opposite. Repp saw Nurse Dunivent and then two days later saw Dr. Kankam. Repp was then referred to an eye specialist after his examination by Dr. Kankam. The eye specialist appointment was cancelled for an unknown reason; however, the record does not contain any allegation that the cancellation was due to any acts by Warden Bedard. Repp's own testimony and evidence from the record demonstrates that Repp's eye condition was conceivably misdiagnosed by Nurse Dunivent and Dr. Kankam. Repp stated in his deposition that "they goofed the treatment on this eye . . . [o]nce they realized, like I said, they goofed the treatment on this eye" I had no problems with CoreCivic's medical care. (Doc. 66-2 at 16). A misdiagnosis is not grounds for establishing deliberate indifference. *Estelle,* 429 U.S. at 105-106.

Repp's testimony shows he had no problem with his treatment, other than the missed diagnosis on his right eye, so there is no basis to claim Warden Bedard had a

policy, custom, or practice to delay or deny him treatment. Consequently, Warden Bedard is entitled to summary judgment in her favor.

## **CONCLUSION**

Repp fails to present a genuine issue of material fact establishing that Warden Bedard had subjective knowledge of any serious harm to his eye, nor did he set forth any facts that she had a, custom, practice or policy denying or delaying Repp's medical treatment. The mere fact that Warden Bedard was warden of Moore Haven Correction Institute is insufficient to establish deliberate indifference.

Accordingly, it is now

**ORDERED:**

Defendant Warden Laura Bedard's Motion for Summary Judgment ([Doc. 79](#)) is **GRANTED**. Defendant Warden Bedard is hereby **DISMISSED with prejudice** from this case.

**DONE** and **ORDERED** in Fort Myers, Florida this 11th day of September, 2018.

*SHERI POLSTER CHAPPELL*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:
All Parties of Record
SA: FTMP-2

8